Nicholson, C. J.,
delivered the opinion of the Court.
J. N. Hall bought a bill of goods of plaintiffs, amounting to $141.27, and proposed to go to the Gayoso Savings Bank for the money with which to pay for them. They said they would save him the *172 trouble of going to the Bank, as the cheek of B. A. Moon on the Bank was as good to them as money, and they would take it as cash. Hall thereupon passed to them the check of B. A. Moon for $141.27, by delivery, the same being payable to him or bearer. This occurred on the 4th of February, 1868, about 12 o’clock. The Gayoso Savings Bank suspended and closed its doors on the 5th of February, 1868, at 10 o’clock, having paid all checks presented up to that time. The check of B. A. Moon was not presented until after the Bank closed and suspended, on the 5th of February, when it was duly protested for nonpayment, and notice given to B. A. Moon, the drawer. Moon had a deposit of $400 in the Bank when it closed. Schoolfield ' & Hanauer have sued B. A. Moon for the amount of the check.
On the trial of the cause the Circuit Judge .charged the jury: “As a general rule the holder of a check has the day on which the check is drawn and the business hours of the following day to present the same for payment; but this rule is not absolute. The holder of a check must use due diligence in the presentation of the check for payment; and if the Bank failed after the holder could have got his money on the check, the loss is his.” Under this charge the jury found for defendant, and the plaintiffs have appealed.
The proof makes it certain, that if the check had been presented at the Bank on the 4th of February, the day on which it was drawn, or on the 5th before the time when it closed up and failed, it would have *173 been paid. It was manifestly in view of this proof, that the Judge instructed the jury that “if the Bank failed after the holder could have got his money, the loss is his.” The question arises, is the general rule laid down by the Judge, that the holder of a bank check has the day on which it is drawn and the business hours of the succeeding day within which to present it — subject to the qualification stated? It is important to keep in mind the distinction between the liability of the drawer and of the endorser or trans-ferrer of a check. When the holder of a check sues the drawer, if the drawer, the drawee and the payee-live in the same place, the drawer is liable if the check be presented for payment within the business hours of the next day after it is drawn. This is a settled rule of commercial law, applicable to the liability of the drawer to the holder of bank checks: 2 Parsons on Bills and Notes, 72; Chitty on Bills, 385. The check is an appropriation, as between the drawer and holder, to the latter of so much money in the banker’s hands. The holder of the check may allow the money to remain in the banker’s hands, and the drawer cannot complain, unless he is injured thereby. But the risk of allowing the money to remain in the banker’s hands, after the expiration of the banking hours of the day after the check is drawn, rests upon the holder of the check.
But as between the holder of a cheek and an endorser of it, or the transferrer and the drawer, it must be presented for payment within a reasonable time; and it seems by the best authority, that this is the *174 same as required in the case'of a bill or note: 2 Parsons on Bills and Notes, 73. As it is one of the peculiar characteristics of a bank check that it has no days of grace, it is necessarily due as soon as it is drawn and delivered to the payee or holder. As between the holder and endorser, therefore, the holder is bound to present it for payment immediately, or at least within a reasonable time, according to the relative localities of the parties; otherwise the endorser ceases to be liable.
It is obvious that if this rule should " be applied as between the holder and the drawer, the bank check would cease to be anything but a bill of exchange, and could no longer fill the special channel in commercial transactions for' which it is designed. The proof in the case shows clearly the commercial usage in respect to bank checks, and the reason of the rule which gives the holder the day on which they are drawn and the next day for presentation for payment. During that period the check is at the risk of the drawer — afterward it is at the risk of the holder. This is the fixed law which governs the bank check and controls the rights and obligations of the holder and drawer. The drawer issues it with the implied undertaking that it need ntot be presented for payment except within the business hours of the next day after its issuance — and the holder takes it with the same understanding. During this time, therefore, no laches can be imputed to the holder, unless he received it with a different contract. The fact proven, in this case, that the plaintiffs received the check as cash *175 from Hall in payment of a bill oí goods, has no effect as between the plaintiffs and the defendant. If the plaintiffs had sued Hall as endorser or transferrer of the check, this proof would have been pertinent.
We are, therefore, of opinion that the Circuit Judge erred in his charge to the jury. The judgment is reversed and a new trial awarded.